2018 UT App 218

## THE UTAH COURT OF APPEALS

OSMOND SENIOR LIVING LLC,
Appellant,
*v.*
UTAH DEPARTMENT OF PUBLIC SAFETY AND
UTAH DEPARTMENT OF HEALTH,
Appellees.

Opinion
No. 20170153-CA
Filed November 23, 2018

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 150401586

Richard J. Armstrong and Judson D. Burton,
Attorneys for Appellant

Sean D. Reyes and Joshua Davidson,
Attorneys for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1 Osmond Senior Living, LLC (Osmond) submitted plans and obtained the appropriate building permit to construct a new, three-story assisted living facility in Lindon City (the City). The State Fire Marshal Division alerted Osmond that the structure, the construction of which was well underway, might not be approved for licensure as an assisted living facility because the third floor violated building codes for such facilities. Osmond changed its plans, removed the partially completed third story, and built a two-story facility instead. About six months later, the State Fire Marshal told Osmond that three-story assisted living facilities were now allowed. Osmond

brought an unconstitutional takings claim against the Department of Public Safety and the Department of Health, seeking millions in compensation for renovation costs and lost revenue. The district court ruled that it lacked subject matter jurisdiction because Osmond did not exhaust its administrative remedies. In the alternative, the court ruled that Osmond failed to state a claim for which relief could be granted because it never held a vested interest in the three-story facility. Osmond appeals. We affirm.

BACKGROUND

¶2     Osmond planned to build a three-story assisted living facility in the City, with the first two floors built for Institutional Group 2 (I-2) occupancy and the third floor built for Institutional Group 1 (I-1) occupancy.[1] Osmond received the required building permit from the City prior to construction. The permit, issued in late January 2014 (1) required the applicant to comply with all city, county, and state building laws and ordinances and (2) prohibited occupancy "until after final inspection and zoning and occupancy compliance certificate is issued."

¶3     With permit in hand, Osmond began construction as planned, building for I-2 occupancy on the first two levels and I-1 occupancy on the third level. Part of Osmond's attempt to

---

1. Under the International Building Code, I-1 occupancy buildings are used "for more than 16 persons who reside on a 24 hour basis in a supervised environment and receive *custodial care*." 2012 International Building Code § 308.3. I-2 occupancy buildings are used to provide medical care on a twenty-four-hour basis for more than five persons who are "*incapable of self-preservation*." *Id.* § 308.4. The relevant section of the code is available at https://codes.iccsafe.org/content/IBC2012 /chapter-3-use-and-occupancy-classification [https://perma.cc /5EKV-EL97].

construct a compliant facility involved the inclusion of a two-hour firewall between the I-1 and I-2 levels. But in April 2014—several months after construction began and after Osmond had erected the structural components for all three floors—Osmond's architect received a letter (the Letter) from the Utah Department of Health signed by the Architect and Special Deputy of the Utah State Fire Marshal.[2] The Letter stated that it was the third "plan review letter" issued by the department concerning the project. The Letter indicated that the department had received drawings for the project in February 2014 and that it had sent an earlier letter in March 2014 regarding "outstanding items" that needed to be addressed. Although the Letter referenced these earlier communications, the appellate record contains no other documentary evidence of prior communication between Osmond and any state agency.

¶4     In bold type, the Letter warned: "Plans for the project have not been approved by our office. Any items that are currently being constructed that are found not to be in compliance with the required rules will need to be corrected before we can approve plans and ultimately recommend approval for licensure." The Letter opined that the project did not comply with the International Building Code [IBC] or Utah law for an assisted living facility. Specifically, the Letter stated:

> As we see it, the biggest issue on this project is the permissibility of a 3 story, wood framed building that contains an I-2 occupancy and a type-2 assisted living population. . . . [A]fter reading through the commentary to the IBC and consulting with different code officials and Life Safety

---

2. The following were copied on the Letter: (1) Jared Osmond, owner of Osmond Senior Living; (2) Phil Brown, Chief Building Official for the City; (3) Mark Burton, Deputy State Fire Marshal; and (4) Richard Gee, Utah State Fire Marshal's plan reviewer.

surveyors . . . it is our opinion that a 3 story, wood framed building containing an I-2 occupancy is not allowed per the IBC.

The Letter then made the following request:

> We ask that you and the owner consider removing the top floor of the new building to meet not only what we interpret to be required in the IBC, but more so to comply to what we have been told is the intent of the [State of Utah] amendment allowing a maximum of 2 stories, wood framed construction for I-2 occupancies.

The Letter expressed that the Utah Department of Health was concerned about the consistent application of regulations:

> Owners from competing [assisted living] facilities have frequently stated to us that we have allowed leniency to their competition on rules relating to assisted living facilities while requiring them to be in strict compliance. It is our intent to apply the rules for assisted living facilities evenly throughout the State of Utah. I am concerned that if this project is built as currently designed, it may set a bad [precedent] for current and future assisted living facilities in the State of Utah.

Lastly, the Letter said, "We will leave the permissibility of the 3 story buildings containing I-2 occupancies up to the local Building Official having jurisdiction to enforce as they ultimately have jurisdiction on this matter." The Letter concluded by asking Osmond's architect to "respond to these comments in writing and with appropriate drawings so that approval may be considered."

¶5    In May 2014, Osmond representatives met with State Fire Marshal Division officials and other state officials to discuss the Letter and the future of the project (the Meeting).[3] According to Osmond, the Deputy State Fire Marshal and other state officials warned that the three-story facility "would never be licensed to operate as an assisted living facility." Although Osmond asserts throughout its brief that state officials ordered the construction to be "stopped," the record is not so absolute. Rather, it indicates that Osmond was told that its facility would be not be licensed as an assisted care facility if it had three floors instead of two, but it was never told to "stop" construction. The State contends that the State Fire Marshal merely "advised" Osmond that a three-story facility would "not comply with the [IBC] and would not be licensed."

¶6    In response to the Letter and the Meeting, Osmond redesigned the project as a two-story facility. Osmond incurred significant expenses in redesigning, reengineering, and rebuilding the project. Osmond also alleges it lost the annual rental value—approximately $1,008,000—of the entire third floor.

¶7    In October 2014, the Deputy State Fire Marshal visited the facility and, according to Osmond, stated: "[W]e've changed our policy and now allow three stories to be built for assisted-living."[4]

---

3. The parties agree that the Meeting took place, but the record contains no transcript or minutes of what transpired at the Meeting.

4. It is unclear from the record whether there was a change in interpretation of the State Fire Code or whether it was a decision not to enforce it in this instance. As the Utah Department of Health indicated in the Letter to Osmond's architect, some

(continued…)

¶8   Osmond never attempted to appeal or otherwise seek review of the State Fire Marshal Division's directives expressed in the Letter or the Meeting. Instead, after capitulating to the State Fire Marshal Division's warnings and completing the project, Osmond filed suit for an unconstitutional taking against the Utah Department of Health and the Utah Department of Public Safety (collectively, the State). The district court granted the State's motion to dismiss for lack of subject matter jurisdiction, agreeing with the State that Osmond failed to exhaust its administrative remedies. The court also granted summary judgment in favor of the State on the alternative ground of failure to state a claim, concluding that Osmond did not have a vested property interest in the property allegedly taken. Osmond appeals.

## ISSUE AND STANDARD OF REVIEW

¶9   Osmond raises a number of arguments relating to the district court's grant of the State's motion to dismiss.[5] Whether the district court erred by granting the State's motion to dismiss under rule 12(b)(1) for lack of subject matter jurisdiction is a question of law reviewed for correctness.[6] *See Republic Outdoor*

---

(…continued)
assisted living facility owners had expressed concern that the regulations were being inconsistently implemented.

5. Because we conclude that the district court lacked subject matter jurisdiction under Utah Rule of Civil Procedure 12(b)(1) owing to Osmond's failure to exhaust administrative remedies, we do not address the takings claim, which Osmond asserts the district court erroneously dismissed under rule 12(b)(6).

6. The State argues that because Osmond did not raise the issue of the Utah Fire Prevention Board's adjudicative authority at the district court, Osmond's arguments on subject matter

(continued…)

*Advert., LC v. Utah Dep't of Transp.*, 2011 UT App 198, ¶ 12, 258 P.3d 619.


ANALYSIS

¶10 Because Osmond did not exhaust the available administrative remedies, the district court ruled that it lacked subject matter jurisdiction to review the claim. *See* Utah R. Civ. P. 12(b)(1); *Western Water, LLC v. Olds*, 2008 UT 18, ¶ 18, 184 P.3d 578 ("Authority for judicial review arises only after the parties have exhausted their administrative remedies unless an exception applies."). Osmond argues that it was not required to exhaust its administrative remedies because the legislature did not specifically delegate adjudicative authority to the Utah Fire Prevention Board (the Board). Osmond further argues that, even if the legislature delegated adjudicative authority, Osmond was excused from exhausting those remedies because the State Fire Marshal acted outside the scope of his authority. We conclude that the legislature has delegated adjudicative authority to fire protection districts and that the State Fire Marshal acted within the scope of his authority.

I.    The Legislature Delegated Adjudicative Authority to Fire Protection Districts.

¶11 District courts have "original jurisdiction in all matters except as limited . . . by statute." Utah Const. art. VIII, § 5. Thus,

---

(…continued)
jurisdiction were waived. "One exception to the preservation requirement is subject matter jurisdiction. Because subject matter jurisdiction goes to the heart of a court's authority to hear a case, it is not subject to waiver and may be raised at any time, even if first raised on appeal." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 (cleaned up). We therefore consider Osmond's arguments.

"Utah courts have subject matter jurisdiction over a legal claim unless adjudicative authority for that claim is specifically delegated to an administrative agency." *Zions Mgmt. Services v. Record*, 2013 UT 36, ¶ 24, 305 P.3d 1062 (cleaned up). To determine whether the legislature has delegated adjudicative authority to an agency, courts "look to the plain language of the applicable statute." *Ramsay v. Kane County Human Res. Special Service Dist.*, 2014 UT 5, ¶ 9, 322 P.3d 1163.

¶12 The task before us then is to determine whether the district court retained adjudicative authority or whether the legislature specifically delegated that authority elsewhere. The relevant code sections[7] indicate that adjudicative authority is "administered locally by a city, county, or fire protection district." *See* Utah Code Ann. § 53-7-204(4) (LexisNexis Supp. 2018).[8]

¶13 The Utah Fire Prevention and Safety Act, *id.* §§ 53-7-101 to -506, outlines the specific duties of the Utah Fire Prevention Board and the administrative duties of local fire protection districts. Subsection 204 lists the Board's duties but does not delegate adjudicative authority to the Board. Rather, subsection 204 states that "creating a local board of appeals in accordance with the state fire code" "shall be administered locally by a city, county, or fire protection district." *Id.* § 53-7-204(4)(b). The State Construction and Fire Codes Act (the State Fire Code), referenced in the Utah Fire Prevention and Safety Act, provides:

---

7. Because the statutory provisions in effect at the time do not differ in any material way from those now in effect, we cite the current version of the Utah Code for convenience.

8. As our supreme court has pointed out, fire protection districts are not agencies of the State, but they nonetheless retain agency status. *See Lyon v. Burton*, 2000 UT 19, ¶ 80, 5 P.3d 616 ("[F]ire protection districts are categorized with other nonstate agency entities like counties, towns, and metropolitan water districts.").

"A compliance agency shall establish a method of appeal by which a person disputing the application and interpretation of a code may appeal and receive a timely review of the disputed issues in accordance with the codes." *Id.* § 15A-1-207(3)(a) (LexisNexis 2013).

¶14 The statutory language makes clear that adjudicative authority for the "application and interpretation of a code," *see id.*, has been delegated by the legislature to "a local board of appeals" through the Utah Fire Prevention and Safety Act, *see id.* § 53-7-204(4)(b). It is not entirely clear why the legislature chose to delegate that authority to a local entity rather than to the Utah Fire Prevention Board itself; but the limited question before us is whether adjudicative authority has been delegated. We conclude that it has.

II.    The State Fire Marshal Did Not Act Outside the Scope of His Authority.

¶15 Having determined that the legislature delegated adjudicative authority for the application and interpretation of the State Fire Code, we now address Osmond's alternative argument that it was excused from exhausting its administrative remedies because the State Fire Marshal acted outside the scope of his statutory authority. Osmond specifically argues that the State Fire Marshal (1) acted outside his scope of authority under Utah Code section 53-7-104(3)(b) and (2) did not act in compliance with the procedures outlined in Utah Code section 63G-4-201. We disagree on both points.

A.    The State Fire Marshal Acted Within the Scope of Authority to Enforce the Fire Code Under Utah Code Section 53-7-104.

¶16 Utah Code section 53-7-104 outlines the enforcement of the State Fire Code and the scope of enforcement authority. The section states,

> The state fire marshal may enforce the state fire code and rules in: . . . state-owned property, school district owned property, and privately owned property used for schools located within corporate cities and county fire protection districts, asylums, mental hospitals, hospitals, sanitariums, homes for the aged, residential health-care facilities, children's homes or institutions, or similar institutional type occupancy of any capacity.

Utah Code Ann. § 53-7-104(3)(b) (LexisNexis Supp. 2018).

¶17 Osmond argues that the statute allows the State Fire Marshal to enforce the State Fire Code against only one type of privately owned property: private property located within corporate cities used for schools. We disagree.

¶18 The Utah Supreme Court has stated that "the plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Kouris v. Utah Highway Patrol*, 2003 UT 19, ¶ 12, 70 P.3d 72 (cleaned up). Osmond would have us read the statute to mean that "privately owned property used for schools located within corporate cities and county fire protection districts," Utah Code Ann. § 53-7-104(3)(b), is an independent class of privately owned property inserted into the middle of a list of state-owned property categories to which enforcement authority applies. In other words, Osmond argues that the statute authorizes enforcement "against *state-owned property*, including school district owned property, asylums, mental hospitals, homes for the aged, residential health-care facilities, etc.," but that an "exception-to-the-exception"—privately owned property used for schools in corporate cities and county fire protection districts—is grafted in the middle of that list. While Osmond's construction of the statute is grammatically creative, it does not withstand closer examination.

¶19 The statute contemplates three property classifications separated by commas: (1) "state-owned property," (2) "school district owned property," and (3) "privately owned property." *Id.* The first two classifications are unqualified; the State Fire Code may be enforced in all state-owned and school district owned property. The third classification, privately owned property, is qualified by specific subsets and defined by the type of use. Thus, the State Fire Code does not apply to all privately owned property; it applies only to those private properties specifically identified in the statute. And among the subset of private properties to which it expressly applies are "residential health-care facilities." *Id.* Based on the plain language of the statute, we have no difficulty concluding that the State Fire Marshal may enforce the State Fire Code against private property used as an assisted living facility.

¶20 We further note that section 53-7-204, a section in the same act, similarly identifies assisted living facilities under the umbrella of the section's authority. That section states that the Utah Fire Prevention Board shall administer the State Fire Code by establishing standards in *any*

> (A) publicly owned building, including all public and private schools, colleges, and university buildings; [or] (B) *building or structure used or intended for use as* an asylum, a mental hospital, a hospital, a sanitarium, a home for the elderly, *an assisted living facility*, a children's home or day care center, or any building or structure used for a similar purpose.

Utah Code Ann. § 53-7-204(1)(b)(i)(A)-(B) (emphases added). This section's organization reinforces our reading of section 104—that the State Fire Code is applicable and enforceable against any building, public or private, used as an assisted living facility.

B.    The State Fire Marshal Did Not Exceed His Authority by Failing to Comply with Procedures for an Adjudicative Proceeding.

¶21    Utah Code section 63G-4-201 outlines the procedure for an administrative adjudicative proceeding. This subsection requires that officers conducting adjudicative proceedings, among other things, serve a "notice of agency action," Utah Code Ann. § 63G-4-201(1)(a) (LexisNexis 2016), hold a hearing "after timely notice to all parties," *id.* § 63G-4-203(1)(d), and provide the parties "a signed order in writing," *id.* § 63G-4-203(1)(i).

¶22    Osmond argues that the State Fire Marshal acted outside his authority by failing to comply with these procedures. But these requirements apply only to adjudicative acts. They would not apply, for example, to the State Fire Marshal picking up the telephone and discussing a potential violation with a builder. Similarly, the Letter sent by the State Fire Marshal does not rise to the level of an agency action because its language does not constitute an "application and interpretation[9] of a code," *id.* § 15A-1-207(3)(a), but only expresses the State Fire Marshal's opinion that a three-story building would not be in compliance with the State Fire Code. The Letter does not indicate that any action was going to be taken. The State Fire Marshal never issued a citation, notice of violation, or a stop work order. In fact, the Letter explicitly states that the decision regarding the permissibility of a three-story building containing I-2 occupancies would be left up to local building authorities. Thus,

---

9. The Letter uses the word "interpret" but does so in a qualified and informal sense: "We ask that you and the owner consider removing the top floor of the new building to meet not only what we interpret to be required in the IBC, but more so to comply to what we have been told is the intent of the [State of Utah] amendment allowing a maximum of 2 stories, wood framed construction for I-2 occupancies."

the State Fire Marshal did not issue an administrative ruling or conduct an adjudicative proceeding in sending the Letter or holding the Meeting. Rather, by these actions, the State Fire Marshal merely advised Osmond of potential licensing problems. Put succinctly, the State Fire Marshal could not exceed his authority by failing to follow the procedures for adjudicative actions because there was no adjudication.

¶23 Even in the absence of agency action, the Utah Administrative Code provides a means to petition for a declaratory order in situations where the applicability of a rule or code provision is in question. *See id.* § 63G-4-503(1) ("Any person may file a request for agency action, requesting that the agency issue a declaratory order determining the applicability of a statute, rule, or order within the primary jurisdiction of the agency to specified circumstances."). Rather than pursue a declaratory order, Osmond opted to yield to the State Fire Marshal's warning and voluntarily redesign the building while it was under construction.[10]

¶24 We conclude that the State Fire Marshal did not act outside the scope of his authority by warning Osmond of a perceived violation.

CONCLUSION

¶25 The district court lacked subject matter jurisdiction because the legislature has delegated adjudicative authority for interpretations of the State Fire Code to local fire protection districts. We hold that Osmond was not excused from exhausting administrative remedies because the Letter and the

---

10. The Letter stated that it was the third plan review letter that the State Fire Marshal had issued on the project, suggesting that Osmond had at least two other occasions to seek clarification by asking the agency to issue a declaratory order.

Meeting were actions taken within the scope of authority granted in the relevant statutes. Accordingly, the district court correctly granted the motion to dismiss.

¶26    Affirmed.

——————