**2022 UT App 102**

## THE UTAH COURT OF APPEALS

SALT LAKE CITY LAUMALIE MA'ONI'ONI FREE WESLEYAN CHURCH
OF TONGA AND VILIAMI HOSEA,
*Appellants,*
*v.*
DEPARTMENT OF COMMERCE, DIVISION OF CORPORATIONS,
*Appellee.*

Opinion
No. 20200778-CA
Filed August 18, 2022

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 180907281

Robert C. Avery, Nathan E. Burdsal, and Hutch U.
Fale, Attorneys for Appellants

Sean D. Reyes, Sarah E. Goldberg, and Erin T.
Middleton, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1     From "the metaphysical principle that nothing can confer
what it does not possess," it follows that an administrative agency
cannot confer validity on a document if it lacks the power to do
so. *See City of Chicago v. Morales*, 527 U.S. 41, 91 n.9 (1999) (Scalia,
J., dissenting).[1]

---

1. Because Justice Scalia saw fit to apply an interpretation of the
legal maxim, *nemo dat qui non habet* ("No one gives who does not
possess."), which is generally invoked in commercial transactions,
(continued…)

¶2     Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga and Viliami Hosea (collectively, FWC) argue that the Division of Corporations (the Division) is endowed with the authority to determine the validity of corporate filings. From this position, FWC asserts that the district court erred in dismissing a petition that asked for a determination that the Division lacked the authority to revoke and rescind amended articles of incorporation (the Amended Articles) that FWC had previously filed with the Division. Seeing no error in the district court's decision, we affirm.

BACKGROUND

¶3     In 1978, the Rocky Mountain Conference (RMC) of the United Methodist Church chartered a congregation, the Tongan United Methodist Church (TUMC), in Utah. TUMC was incorporated as a Utah nonprofit corporation. In 2012, several members of TUMC sought to disaffiliate with TUMC and sever ties with the United Methodist Church. Five of the nine trustees for TUMC called for a mail-in vote seeking to amend its articles of incorporation. After the mail-in vote approved the Amended Articles, the members who had initiated the vote submitted a series of registration changes to the Division, including changing the name of TUMC to the Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga and changing the principals (including the registered agent). Thereafter, FWC submitted the Amended Articles to the Division.

¶4     The same day FWC submitted the Amended Articles, it filed a lawsuit seeking (1) an injunction to prevent a former director and principal of TUMC from controlling or accessing any of the entity's property and (2) declaratory relief that Hosea was

_____

to a broader context (namely, a case involving a loitering ordinance), we do the same. *See Legal maxims*, Black's Law Dictionary (11th ed. 2019).

the only individual authorized to represent the entity or control its property. TUMC's board of trustees and the RMC, in turn, filed a lawsuit against FWC and the members of FWC's board of directors (the Private Litigation) seeking, among other things, a declaration that the mail-in vote was improper and that any corporate actions FWC attempted to take were null and void.

¶5     After being notified of the Private Litigation, the Division informed the parties that it would place the Amended Articles on administrative hold until the dispute was settled through agreement or by the court. FWC then informed the Division that it intended to challenge the decision to place the changes on hold, and the Division subsequently removed the hold and accepted the Amended Articles. *See Laumalie Ma'oni'oni Free Wesleyan Church of Tonga v. Ma'afu*, 2019 UT App 41, ¶¶ 22–23, 440 P.3d 804. Nevertheless, the Division's record noted a dispute pending among the principals. *Id.* ¶ 23.

¶6     In the Private Litigation, the district court eventually entered an order determining that the mail-in vote was improper because the vote did not comply with TUMC's original articles of incorporation, and therefore none of FWC's subsequent corporate actions were authoritatively taken or valid. *Id.* ¶¶ 30–31. The court further determined that TUMC and the RMC were not required to exhaust administrative remedies because "the Division made no determination regarding the parties' rights, the validity of the vote by mail, or the Amended Articles." *Id.* ¶ 28 (cleaned up). The RMC notified the Division of the court's decision, and the Division rescinded the Amended Articles and reinstated TUMC's original articles of incorporation. *Id.* ¶ 32.

¶7     Shortly thereafter, in the wake of the court ruling, FWC sought agency review of the Division's decision to rescind the Amended Articles. The Department of Commerce affirmed the Division's decision. FWC then filed the petition that initiated the present case, seeking judicial review in the district court of the

Department of Commerce's order affirming the Division's decision. In the petition, FWC asserted that it was "entitled" to a court order providing that the "Amended Articles must be accepted and approved by the Division, and that the Division lacked the authority to revoke and erred in revoking such Amended Articles."

¶8    After filing the petition for the present case, FWC appealed the decision rendered in the Private Litigation, and this court affirmed. *Id.* ¶ 90. While that appeal was pending, the district court granted a stay in the present case. After this court issued its opinion affirming the district court in the Private Litigation, the district court granted the Division's motion to dismiss FWC's petition in this case because (1) issue preclusion prevented relitigation of FWC's claims, (2) FWC failed to state a claim on which relief could be granted because the Amended Articles had been determined to be invalid in the Private Litigation, and (3) the case was moot. FWC now appeals the district court's dismissal of its petition.

ISSUE AND STANDARD OF REVIEW

¶9    The issue on appeal is whether the district court properly dismissed FWC's petition when the court determined that the results of the Private Litigation foreclosed the relief FWC sought. "A ruling on a motion to dismiss presents a legal question that we review for correctness, affording no deference to the district court's decision." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 17, 496 P.3d 76 (cleaned up).[2]

---

2. FWC also argues that the district court improperly dismissed its petition as moot. Because we resolve this appeal on the threshold question of the validity of the Amended Articles, it is unnecessary for us to reach that issue here.

ANALYSIS

¶10    FWC argues that our legislature "has explicitly delegated the ability to make a conclusive determination regarding the validity of amended articles of incorporation for a nonprofit corporation in Utah to the Division." FWC's position appears to be primarily based on its assertion that nothing in the Utah Revised Nonprofit Corporations Act (the Act), *see generally* Utah Code Ann. §§ 16-6a-101 to -1705 (LexisNexis 2013 & Supp. 2021), "allows the Division to defer to any other entity, even a district court," to determine the validity of corporate filings. In essence, FWC's entire case rests on the assertion that the Division's eventual acceptance of the Amended Articles endowed that document with permanent validity.

¶11    But FWC's premise about the extent of the Division's authority to determine the validity of filings is simply wrong. As was resolved in the Private Litigation, and as we further explain below, the Division does not have the authority to determine the validity of corporate filings. Because of this, the Division's act of accepting the Amended Articles had no impact on their validity, and the relief FWC now seeks is unavailable.

¶12    Far from "explicitly" granting the Division "the ability to make a conclusive determination" about the validity of corporate filings, the plain language of the Act and our case law—as we will explain—say just the opposite is true. Moreover, nothing in the Act prohibits the Division from recognizing the legal force of the orders of a court of competent jurisdiction regarding the validity of corporate filings. Because the Division never had the authority to make a determination about the validity of documents filed with it, it was not improper for the Division to defer to the authority of the district court's determination that the Amended Articles were invalid. In other words, the Division's deferral to the district court's determination was not improper because the Division had no choice but to give effect to the court's decision.

¶13    The Act itself explicitly states that the Division's acceptance of a document is purely ministerial and does not touch on the underlying validity or invalidity of the document: "The division's duty to file a document under this section is ministerial." *Id.* § 16-6a-110(4)(a) (LexisNexis 2013). And unless otherwise noted in the Act, the Division's "filing or refusal to file a document does not . . . (i) affect the validity or invalidity of the document in whole or in part; (ii) relate to the correctness or incorrectness of information contained in the document; or (iii) create a presumption that . . . (A) the document is valid or invalid; or (B) information contained in the document is correct or incorrect." *Id.* § 16-6a-110(4)(b). Thus, it is clear from the Act itself that, apart from a statutory provision to the contrary, the Division's acceptance of the articles of incorporation is a ministerial act that does not vouchsafe their underlying validity.

¶14    Moreover, in the appeal of the Private Litigation, this court explained that the Division's duty is ministerial, meaning that it is a duty that "requires neither the exercise of official discretion nor judgment." *Laumalie Ma'oni'oni Free Wesleyan Church of Tonga v. Ma'afu*, 2019 UT App 41, ¶ 41, 440 P.3d 804 (cleaned up); *see also Ministerial*, Black's Law Dictionary (11th ed. 2019) (defining "ministerial" as "relating to . . . an act that involves obedience to instructions or laws instead of discretion, judgment, or skill"). On this basis, this court concluded that "a determination regarding the validity of the mail-in vote, the Amended Articles, or any of the resulting changes" were "legal questions that [fell] outside the Division's authority." *Laumalie*, 2019 UT App 41, ¶ 49.

¶15    FWC resists this conclusion by arguing that Utah Code section 16-6a-203 grants "the Division the authority to make 'conclusive' determinations regarding the validity of articles of incorporation and amended articles of incorporation." *See* Utah Code Ann. § 16-6a-203(2) (LexisNexis Supp. 2021) ("Notwithstanding Subsection 16-6a-110(4), the filing of the articles of incorporation by the division is conclusive proof that

all conditions precedent to incorporation have been satisfied . . . ."). But our case law indicates otherwise. Indeed, this court explicitly rejected reading section 203 as granting any authority to the Division to determine the ultimate legal validity of articles of incorporation. *See Laumalie*, 2019 UT App 41, ¶ 42. Rather, this court has interpreted this section to mean that the Division's acceptance of articles of incorporation signals that "the relevant entity is conclusively recognized in Utah as a nonprofit corporation that is in existence." *Id.* ¶ 42 (cleaned up). And this court rejected FWC's interpretation of section 203 that "attempt[ed] to inflate" the "adjudicative authority" of the Division to determine whether corporate changes are "made with proper authority." *See id.* Put simply, filing the articles is conclusive proof that conditions precedent to the corporation's existence have been satisfied. But section 203 does not speak to the underlying validity of the articles; rather, it merely says that filing the articles brings the corporation into existence—even if those articles are later determined to be incorrect or invalid.

¶16 Thus—as was explained in the appeal of the Private Litigation—because TUMC never challenged the existence of the corporation, it was not required to first exhaust administrative remedies with the Division. *See id.* ¶ 47; *see also* Utah Code Ann. § 16-6a-111 (LexisNexis 2013) (providing that a nonprofit corporation may appeal the Division's refusal "to file a document delivered to it for filing" and "may appeal the refusal to the executive director" of the Department of Commerce). Here, TUMC challenged the underlying validity of a document properly filed with the Division—a document the validity of which the Division lacked the statutory authority to determine. In other words, TUMC could not pursue an administrative remedy with the Division because the Division lacked the authority to offer one in this context. Rather, as this court determined, "the district court had subject matter jurisdiction over the dispute" concerning the validity of the Amended Articles. *See Laumalie*, 2019 UT App 41, ¶ 49.

¶17    Additionally, the Division was required to give effect to the orders of the court in the Private Litigation. As this court stated, "District courts have original jurisdiction in all matters except as limited by statute. Thus, district courts have subject matter jurisdiction over a legal claim unless adjudicative authority for that claim is specifically delegated to an administrative agency." *See id.* ¶ 38 (cleaned up); *see also* Utah Const. art. VIII, § 5 ("The district court shall have original jurisdiction in all matters except as limited by this constitution or by statute . . . ."); *accord Zions Mgmt. Services v. Record*, 2013 UT 36, ¶ 24, 305 P.3d 1062; *Osmond Senior Living LLC v. Utah Dep't of Public Safety*, 2018 UT App 218, ¶ 11, 437 P.3d 621. The Division had no authority to adjudicate the validity of the Amended Articles; thus, it properly belonged to the district court to make a validity determination in the Private Litigation. *See* Utah Const. art. V, § 1 ("The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.").

¶18    And because the district court had adjudicative authority to determine the validity of the Amended Articles and the Division had no such power, the Division was obligated to give effect to the outcome of the Private Litigation. After all, by statute, the Division "is responsible for corporation . . . filings in this state." *See* Utah Code Ann. § 13-1a-1 (LexisNexis 2013). With such responsibility, the Division has "the power and authority reasonably necessary to enable it to efficiently administer the laws and rules for which it is responsible and to perform the duties imposed upon it by law." *See id.* § 13-1a-6; *see also id.* § 16-6a-104 ("The [D]ivision has the power reasonably necessary to perform the duties required of the [D]ivision under [the Act]."). Thus, to adequately perform its ministerial duty—a duty devoid of the ability to make a validity determination—the Division must be

able to give effect to a court order regarding the validity of articles of incorporation. As the Division points out, any "other interpretation of the Division's authority would be nonsensical and lead to the absurd result that FWC . . . advocate[s] for here—that the Division may not revoke a filing that the courts have deemed to be invalid." *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 73, 210 P.3d 263 ("When statutory language plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results." (cleaned up)).

¶19    *Nye v. Bacon*, 18 P.2d 289 (Utah 1933), illustrates how the Division is bound by the decision rendered in the Private Litigation. In *Nye*, two parties (Nye and Johnson) disputed the ownership of water rights. *Id.* at 289. Nye claimed the rights were private and belonged to him, while Johnson argued that they were public and subject to his appropriation. *Id.* at 291. Nye brought suit in the district court, which found and decreed that the water rights were private and belonged to Nye. *Id.* at 290. Johnson then filed an application with the state engineer to appropriate the waters in question. *Id.* at 289. Nye served a copy of the findings and decree from the district court on the state engineer. *Id.* at 290. The state engineer nevertheless approved Johnson's application. *Id.* Nye then filed a motion seeking relief with the district court, which determined the parties were precluded by the former ruling and vacated the state engineer's approval of the application. *Id.*

¶20    On appeal, Johnson argued "that it was within the exclusive province of the state engineer to determine whether the waters in question were or were not public waters and that the district court was without jurisdiction to hear or determine whether or not the waters involved were public or private waters." *Id.* (cleaned up). For the state engineer's authority, Johnson relied on statutory language and case law stating "that the right . . . to divert and use unappropriated water must be initiated by filing an application in the state engineer's office." *Id.*

at 290–91 (cleaned up). Our supreme court deemed the case law inapplicable, apparently because it concerned "the method of acquiring . . . rights to the unappropriated public waters of the state" rather than an underlying determination of whether the water in question was private and appropriated or public and unappropriated. *Id.* at 291. Given that it was within the district court's jurisdiction to determine whether the water was public or private, the court affirmed the judgment below and stated that the district court's judgment was binding on the parties and the state engineer, even though he was not a party to the proceedings. *Id.*

¶21    Just as the state engineer in *Nye* had no authority to determine whether the waters were public or private and, consequently, was required to defer to the decision rendered on that issue by a court of competent jurisdiction, the Division had no authority to determine the validity of the Amended Articles and was required to give effect to the ruling of the district court on the issue of their validity.[3] As a result, the Division acted properly in rescinding the Amended Articles consistent with the judgment of the district court in the Private Litigation.

CONCLUSION

¶22    Because the Division lacked the authority to determine the validity or invalidity of FWC's amended articles, we affirm the district court's order dismissing FWC's petition.

—————

3. FWC attempts to factually distinguish *Nye v. Bacon*, 18 P.2d 289 (Utah 1933), on the basis that the court's decision there was rendered before the agency action took place, while here the agency action took place prior to the court's decision. We fail to see how this chronology has any impact on the applicability of *Nye* to the underlying premise that the Division was required to give effect to the court's order that the Amended Articles were invalid.